UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| RAYMOND D. TEMPEST<br>    *Plaintiff*,<br>v.<br><br>Woonsocket Police Department Chief of Police RODNEY REMBLAD, in his individual and official capacity; Woonsocket Police Department Sergeant RONALD PENNINGTON, in his individual and official capacity; and THE CITY OF WOONSOCKET, RHODE ISLAND, by and through its Treasurer Laurie Perry<br>    *Defendants*. | C.A. No. 1:20-00523-MSM-LDA |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
THEIR MOTION TO DISMISS IN LIEU OF ANSWER**

**I.   INTRODUCTION**

Plaintiff Raymond D. Tempest ("Plaintiff") has filed a complaint against the City of Woonsocket, former Chief of Police Rodney Remblad ("Remblad"), and former Sergeant Ronald Pennington ("Pennington") (collectively "Defendants"). The complaint includes several claims under 42 U.S.C. § 1983 and several state-law claims, all arising from Plaintiff's arrest, prosecution, and conviction for the 1982 murder of Doreen Picard, along with the eventual vacatur of that conviction in 2015. Several obstacles, however, bar the complaint; many of its claims run afoul of the applicable three-year statute of limitations, and the entire complaint constitutes an impermissible collateral attack on Plaintiff's conviction. Defendants, therefore, now move to dismiss all claims against them, in lieu of answer, pursuant to Fed. R. Civ. P. 12(b)(6).

**II.   THE ALLEGATIONS IN THE COMPLAINT**

Plaintiff's claims arise from the murder of Doreen Picard ("Picard"), who was found dead at 409 Providence Street in Woonsocket on February 19, 1982. Complaint, Docket at #1, at ¶ 1.

1

Over the next nine years, the Woonsocket Police Department conducted an investigation into Picard's death, in which both Remblad and Pennington participated. See id. at ¶¶ 4-5, 13-14. The complaint alleges that both men amassed false evidence during this investigation, that the police department "contaminated" the crime scene, id. at ¶ 180, and that Defendants eventually "framed [Plaintiff] for a murder he did not commit through their own coercive interviews and suppressed favorable evidence during [his] trial." Id. at ¶ 20. Plaintiff eventually was indicted for Picard's murder on June 5, 1991, id. at ¶ 6, and was held without bail. See Exhibit A, Warrant for Commitment for Case No. P1-1991-1941A.[1] He stood trial beginning in March 1992, was convicted of second degree murder the following month, and was sentenced to 85 years in prison. Complaint, Docket at #1, at ¶ 114.

The Rhode Island Supreme Court denied Plaintiff's appeal in 1995. Id. at ¶ 175. A decade later, however, he engaged counsel to conduct advanced DNA testing on 22 pieces of evidence from the murder scene, a process that lasted from 2005 to 2012. Id. at ¶¶ 176-179. According to this testing, none of the items contained DNA attributable to Plaintiff. Id. at ¶ 179. As a result, Plaintiff petitioned for post-conviction relief in 2014. Id. at ¶ 183. In 2015, the Rhode Island Superior Court held an evidentiary hearing on Plaintiff's claims, spanning 24 days between February and April. Id. at ¶ 184. That July, the court granted Plaintiff's petition, finding three separate constitutional violations: that the Woonsocket Police Department "engaged in a

---

[1] Although a Motion to Dismiss calls for a limited review, this Court is allowed to consider matters of public record, including documents from other court proceedings, without being required to convert a Rule 12 Motion into a Motion for Summary Judgment. See In Re Colonial Mortg. Bankers Corp., 324 F.3d 12, 15 (1st Cir. 2003); see also Boateng v. InterAmerican Univ., Inc., 210 F.3d 56, 60 (1st Cir. 2000). Furthermore, "courts have made narrow exceptions for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiff's claim; or for documents sufficiently referred to in the complaint." Watterson v. Page, 987 F. 2d 1, 3 (1st Cir. 1993); see also Cruz v. Melecio, 204 F.3d 14, 21 (1st Cir. 2000) (allows a court considering a Motion to Dismiss to consider "not only the complaint but also matters fairly incorporated within it and matters susceptible to judicial notice."). To that end, the Warrant for Commitment generated at Plaintiff's 1991 indictment is attached hereto as Exhibit A. Additionally, the transcript of Plaintiff's Alford plea hearing, referenced below, is attached as Exhibit B.

widespread pattern of highly improper practices regarding the 'coaching' of witnesses," id. at ¶ 188; that the department suppressed certain exculpatory information, id. at ¶ 203; and that the State likewise suppressed exculpatory evidence that surfaced three weeks prior to the 1992 trial. Id. at ¶ 210.

The State appealed, and the Rhode Island Supreme Court upheld the Superior Court's decision on July 14, 2016. Id. at ¶¶ 230-31. The following year, the State proceeded with a retrial based on the original indictment. Id. at ¶ 245. A flurry of pretrial motions ensued, including several motions in limine from both sides and a motion from Plaintiff to dismiss the indictment. Id. at ¶¶ 247, 249-51. The rulings on these motions, in Plaintiff's view, "significantly favored the State and significantly disadvantaged [his] ability to defend himself against the evidence fabricated through years of police misconduct." Id. at ¶ 252. He therefore elected to enter a plea pursuant to North Carolina v. Alford, whereby he maintained his innocence and accepted a sentence of time served in lieu of a possible 85-year sentence if he were to be reconvicted at trial. Id. at ¶¶ 255, 263.

At the plea hearing on December 18, 2017, the presiding Superior Court justice explained the Alford plea process on the record. See Exhibit B, December 18, 2017 Hearing Transcript, at 2:8-23. Plaintiff affirmed that he understood that this plea constituted a conviction, id. at 2:24-3:16, and the court accepted the plea. Complaint, Docket at #1, at ¶ 267. Plaintiff then filed the instant complaint on December 17, 2020.

### III. ARGUMENT

#### A. *Standard of Review*

"[T]o survive a motion to dismiss for failure to state a claim, the complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face." Grajales v. P.R.

Ports Auth., 682 F.3d 40, 44 (1st Cir. 2012) (quoting Katz v. Pershing, LLC, 672 F.3d 64, 72-73 (1st Cir. 2012)). A claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw a reasonable inference that the defendant is liable for the misconduct alleged. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). While the plausibility standard is not akin to a "probability requirement," it is a heightened standard that requires more than a sheer possibility that a defendant has acted unlawfully. Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)). Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557).

Courts utilize a two-step analysis when testing whether a complaint contains plausible allegations. Grajales, 682 F.3d at 45 (citing Iqbal, 556 U.S. at 678-79). In the first step, courts "must separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)." Id. (quoting Morales-Cruz v. Univ. of P.R., 676 F.3d 220, 224 (1st Cir. 2012). In the second step, courts must assay the remaining factual allegations to determine whether they support "the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Morales-Cruz, 676 F.3d at 224). Dismissal of all the counts against Defendants is appropriate here since, as explained more fully below, "the allegations in [the] complaint, however true, [can]not raise a claim of entitlement to relief." Twombly, 550 U.S. at 588.

> B. *The three-year statute of limitations bars counts II-VI and VIII-IX of Plaintiff's complaint.*

All but two of Plaintiff's claims (the exceptions being his two malicious prosecution claims, contained in counts I and VII of the complaint) are barred by a three-year statute of

4

limitations. Defendants address the malicious prosecution claims, which they submit have yet to (and never will) accrue, on separate grounds below.

      i.    **Rhode Island's three-year statute of limitations applies to Plaintiff's constitutional claims.**

The complaint's first five counts allege constitutional claims pursuant to 42 U.S.C. § 1983. The United States Supreme Court "directs federal courts adjudicating civil rights claims under 42 U.S.C. § 1983 to borrow the statute of limitations applicable to personal injury actions under the law of the forum state." Rivera-Muriente v. Agosto-Alicea, 959 F.2d 349, 352 (1st Cir. 1992) (internal quotation marks omitted); see also Wilson v. Garcia, 471 U.S. 261, 276 (1985) (section 1983 claims subject to state statute of limitations for personal injury actions). Accordingly, under Rhode Island law, claims alleging a constitutional violation pursuant to section 1983 are subject to Rhode Island's three-year statute of limitations applicable to personal injury actions. See R.I. Gen. Laws § 9-1-14(b) ("[a]ctions for injuries to the person shall be commenced and sued within three (3) years next after the cause of action shall accrue"); Richer v. Parmelee, 189 F. Supp. 3d 334, 343 (D.R.I. 2016) ("The statute of limitation for bringing a claim alleging a Fourth Amendment violation pursuant to § 1983 is subject to Rhode Island's personal injury statute of limitations—which is only three years."); Walden, III, Inc. v. Rhode Island, 576 F.2d 945, 946-47 (1st Cir. 1978) (affirming that Rhode Island's three year statute of limitations for personal injury actions applies to civil rights actions brought under 42 U.S.C. § 1983). Counts I-V of the complaint, therefore, are subject to a three-year statute of limitations.

      ii.    **Plaintiff's constitutional claims are time barred.**

Plaintiff filed his complaint on December 17, 2020. Therefore, any claim arising from activity prior to December 17, 2017 is time barred. Plaintiff appears, mistakenly, to have designated December 18, 2017—the date of his Alford plea—as the accrual date for his causes of

5

action.  However, "a § 1983 cause of action for damages attributable to an unconstitutional conviction or sentence does not accrue *until the conviction or sentence has been invalidated*." Heck v. Humphrey, 512 U.S. 477, 489-90 (1994) (emphasis added).  Although the Rhode Island Superior Court vacated his original conviction on July 13, 2015, and the Rhode Island Supreme Court affirmed on July 14, 2016, both took place more than three years prior to the date of the instant complaint.  Any cause of action arising from Plaintiff's initial conviction accrued on one of those two dates.  His conviction was not further invalidated at any time after July 14, 2016, and, in fact, his Alford plea in December 2017 instituted another conviction.  Plaintiff therefore had until July 14, 2019, at the latest, to file a complaint based on his purportedly unconstitutional conviction.  Because he failed to do so and instead filed his complaint more than seventeen months late, the statute of limitations bars his constitutional claims.

### iii. Plaintiff's state-law claims for abuse of process and intentional infliction of emotional distress are likewise time barred.

The complaint also includes state-law tort claims for abuse of process, intentional infliction of emotional distress, and respondeat superior.  These claims are likewise time barred.  R.I. Gen. Laws § 9-1-14(b); see also R.I. Gen. Laws § 9-1-25 (establishing three-year limitations period for "claims in tort against the state or any political subdivision thereof or any city or town," and providing that failure to bring such claims within this period "shall constitute a bar to the bringing of the legal action").  Although no court in Rhode Island appears to have established the accrual date for an abuse of process claim, courts within the First Circuit have found that such a claim "ordinarily accrues at such time as the criminal process is set in motion against the plaintiff, or when the plaintiff was aware that such process was employed for an inappropriate collateral objective." Wilson v. Town of Fairhaven, Civil Action No. 18-11099-PBS, 2019 U.S. Dist. LEXIS 69691, at *29 (D. Mass. Mar. 4, 2019) (internal quotation marks omitted) (quoting Watson v. Mita,

Civil Action No. 16-40133-TSH, 2017 U.S. Dist. LEXIS 161625, at *12 (D. Mass. Sept. 29, 2017)). At the earliest, therefore, Plaintiff's abuse of process claim in the instant matter accrued when he was indicted on June 5, 1991; at the latest, it accrued when the Rhode Island Supreme Court affirmed the vacatur of his first conviction on July 14, 2016—the latest possible point he could have been aware that the criminal process against him was inappropriately employed. Both of these dates clearly fall outside the three-year period preceding Plaintiff's December 17, 2020 complaint, and Plaintiff's abuse of process claim is therefore time barred.

      The same analysis follows for Plaintiff's intentional infliction of emotional distress claim. Once again, Rhode Island courts appear not to have opined as to when such a claim accrues. However, at least one court within the First Circuit has pondered, albeit without deciding, "whether a claim of intentional infliction of emotional distress arising from the allegation of the fabrication of evidence resulting in a criminal conviction accrues on the date of the fabrication or the date the criminal proceedings are terminated in favor of plaintiff." Mitchell v. City of Boston, 130 F. Supp. 2d 201, 216 (D. Mass. 2001). Plaintiff's claim is untimely using either accrual date. If the claim accrued at the time of the alleged fabrication, Plaintiff is decades late in pressing it, since the latest any such fabrication took place was Plaintiff's 1992 trial. If the accrual date is instead the date that Plaintiff's criminal proceedings terminated in his favor, Defendants submit that no such favorable termination occurred in light of Plaintiff's eventual Alford plea, discussed at length below, and that Plaintiff's intentional infliction of emotional distress claim therefore has yet to—and never will—accrue. Nevertheless, the only two favorable outcomes Plaintiff received—the 2015 vacatur of his original conviction and the affirmance of that vacatur a year later—both occurred more than three years prior to the date of the instant complaint. Under any formulation, therefore, Plaintiff's claim for intentional infliction of emotional distress is time barred.

Although it has not weighed in on the matter of accrual dates for the torts of abuse of process and intentional infliction of emotional distress specifically, the Rhode Island Supreme Court has opined as to the accrual date for other tort claims arising from facts similar to those of the instant matter. See generally Polanco v. Lombardi, 231 A.3d 139 (2020). In Polanco, the plaintiff brought several negligence claims against the City of Providence and one of its police officers after his 2008 conviction for felony assault was vacated in 2010. Id. at 142-43. The defendants successfully moved for summary judgment on the ground that the statute of limitations barred the plaintiff's claims. Id. at 141. On appeal, the Rhode Island Supreme Court first determined that the plaintiff's causes of action accrued when "his incarceration and its attendant harms began to befall him," which was "when he was arraigned and bound over for trial." Id. at 145. By this reasoning, Plaintiff's state-law tort claims accrued when he was arraigned and held without bail on June 5, 1991, substantially longer than three years before he filed his complaint. See Exhibit A, Warrant for Commitment for Case No. P1-1991-1941A.

Nevertheless, the plaintiff in Polanco sought to toll the limitations period under several theories, including the discovery rule, under which "the applicable statute of limitations will be tolled and will not begin to run until, in the exercise of reasonable diligence, the plaintiff should have discovered the injury or some injury-causing wrongful conduct." 231 A.3d at 146 (quoting Mills v. Toselli, 819 A.2d 202, 205 (R.I. 2003)) (internal quotation marks omitted). The court cautioned that it has never applied the discovery rule to tort claims and declined to do so in Polanco. Id. at 147. It further determined that applying the discovery rule would not allow the plaintiff to toll the limitations period, since the latest he should have discovered his causes of action was his conviction, which was still more than three years prior to the filing of his civil complaint. Id. Even this determination was generous—the court, invoking the principle that "the discovery

8

rule concerns the discovery that one has suffered an injury, not the discovery of the identity of the party allegedly responsible for causing the injury," went on to state that the plaintiff "would have known he was innocent from the moment of his arrest, at his arraignment, and when he was convicted." Id. (quoting Renaud v. Sigma-Aldrich Corp., 662 A.2d 711, 715 (R.I. 1995)).

Any attempt by Plaintiff to invoke the discovery rule in the instant matter must similarly fail. By Polanco's reasoning, Plaintiff, who continues to maintain his innocence even in his complaint, knew of his injury as early as his 1991 indictment and as late as his 1992 conviction. Neither date makes his abuse of process and intentional infliction of emotional distress claims timely. As such, those claims must be dismissed.

      C.    *The complaint is an impermissible collateral attack on a state court conviction.*

Plaintiff may not seek civil damages for allegedly unconstitutional conduct that would, if proved, render his underlying conviction invalid. Heck, 512 U.S. at 486-87; Thore v. Howe, 466 F.3d 173, 179-80 (1st Cir. 2006); Figueroa v. Rivera, 147 F.3d 77, 81 (1st Cir. 1998). This principle applies to all counts in the complaint. In Heck, the plaintiff claimed that prosecutors and police engaged in impermissible conduct that led to his wrongful arrest and conviction. 512 U.S. at 479. The United States Supreme Court held that a plaintiff cannot pursue a civil claim if the recovery on that claim would imply the invalidity of a criminal conviction unless that plaintiff has first established that the conviction has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." Id. at 486-87. The First Circuit has suggested that Heck acts as a bar to the subject matter jurisdiction of the district court. See Figueroa, 147 F.3d at 81.

9

In the instant matter, Plaintiff appears to rest all of his claims, which certainly imply the invalidity of his 1992 conviction, on the 2015 vacatur of that conviction. That vacatur, however, is of no moment in light of Plaintiff's subsequent Alford plea. Despite Plaintiff's claims in the complaint that his Alford plea allowed him to maintain his innocence and therefore favorably terminated the criminal proceeding against him, an Alford plea operates as a conviction. United States v. Taylor, 659 F.3d 339, 347 (4th Cir. 2011) (citation omitted) ("An Alford plea is an arrangement in which a defendant maintains his innocence but pleads guilty for reasons of self-interest."); United States v. Vinton, 631 F.3d 476, 486 (8th Cir. 2011) (internal quotation marks and citation omitted) ("It is well-established that an Alford plea, like other guilty pleas, results in a conviction . . . ."); Abimbola v. Ashcroft, 378 F.3d 173, 181 (2d Cir. 2004) (emphasis in original) ("An Alford plea *is* a guilty plea."); see also Armenakes v. State, 821 A.2d 239, 242 (R.I. 2003) (quoting State v. Mattatall, 603 A.2d 1098, 1118 (R.I. 1991)) ("When a defendant enters an Alford plea, which is accepted by the Court, then such a plea in a later judicial proceeding constitutes a conviction, irrespective of the fact that the defendant maintains his [or her] innocence and does not stand up and confess guilt."). The Superior Court made Plaintiff plainly aware of this fact during his December 18, 2017 plea colloquy. See Exhibit B, December 18, 2017 Hearing Transcript, at 2:24-3:2 ("In other words, if you enter an Alford plea, which is accepted by this Court, that plea effectively constitutes a conviction regardless of the fact that you maintain your innocence."). Plaintiff then affirmed to the court that he understood this. Id. at 3:3-4. To allow the instant complaint to proceed would undermine the finality of the plea bargain Plaintiff struck, thereby jeopardizing the strong societal interest in facilitating compromises to resolve criminal cases. Olsen v. Correiro, 189 F.3d 52, 69 (1st Cir. 1999).

In Olsen, the plaintiff was convicted of first-degree murder and sentenced to life in prison without parole. Id. at 55. A state court overturned his conviction about five years later based on a finding that the Fall River, Massachusetts police officers who investigated the murder failed to disclose certain evidence. Id. In lieu of another trial, the plaintiff pled nolo contendere to a manslaughter charge, resulting in a conviction, and was sentenced to time served. Id. The plaintiff then filed suit against the City of Fall River and two of its police officers under 42 U.S.C. § 1983. A jury awarded him $1.5 million in damages for his imprisonment, which the district court overturned under Heck before ordering a new trial on damages. Id. The second trial yielded a $6,000 jury award, which the plaintiff appealed in the hope of reinstating the first award. Id.

The First Circuit affirmed the district court's decision to overturn the first jury award, id., setting forth a series of analogies to demonstrate that "the policies favoring the finality of valid criminal convictions and sentences and protecting them from collateral attack through civil suit dictate against allowing § 1983 liability for damages for imprisonment . . . ." Id. at 67. The court first analogized the plaintiff's nolo contendere plea to a guilty plea, deeming the two "equivalent" "as to the validity of the sentence rendered." Id. at 68. It found that such pleas create "a break in the chain of events which preceded [the plea] in the criminal process," and that courts advance "a policy of honoring the finality of a criminal conviction by viewing a conviction entered pursuant to a valid plea as the sole legal cause of the incarceration imposed in the sentence." Id.

The court then drew a second analogy to Heck. Id. Although it refused to decide the case using Heck as the district court had, it nevertheless found that Heck's requirement that the criminal proceedings terminate in the plaintiff's favor, akin to the requirement for a malicious prosecution claim, "counsel[ed] against allowing [the plaintiff] to use this § 1983 action to impugn the validity of his sentence." Id. at 69. In the First Circuit's view, "[a]llowing [the plaintiff] to call into

11

question, through a civil jury's award of damages for incarceration, the legal validity of an unimpeached criminal sentence would lead to inconsistency and an undermining of the criminal process." Id. (citation omitted).

Finally, the First Circuit invoked "the established policy of enforcing plea bargains," and the principle that "[a]bsent a showing that a plea was in some way constitutionally infirm, parties must be held to the terms of the plea so as to ensure society's interest in the integrity of the system of compromise resolution of criminal charges." Id. The court noted "compelling reasons" to enforce the plaintiff's nolo plea and insisted that to hold otherwise would "would undermine the finality of plea bargains and jeopardize society's interest in a system of compromise resolution of criminal cases." Id.

The Olsen court ultimately determined that "[t]hese policies of finality and the prevention of collateral attack on criminal convictions" precluded the plaintiff from recovering damages for his incarceration. Id. at 69-70. The very same policies similarly preclude Plaintiff's recovery in the instant matter. As in Olsen, Plaintiff struck a plea bargain after his initial conviction was vacated. His Alford plea, like the plaintiff's nolo plea in Olsen, operated as a conviction but allowed him to refrain from admitting to the charges he faced while still "agree[ing] that both his sentence and conviction were valid." Id. at 69. Like a nolo plea, Plaintiff's Alford plea operates as a conviction, and therefore broke the causal chain between his first conviction (and the means by which it was obtained) and his incarceration. Furthermore, since the criminal proceedings here mirrored those of Olsen—a vacated conviction followed by a second conviction via plea bargain—Plaintiff did not, and never will, obtain a favorable result, and any challenge to his second conviction would undermine the criminal process that produced it. Similarly, the First Circuit's "compelling reasons" for enforcing the plea bargain in Olsen apply with equal force here, including

12

the finality of such bargains and the societal interest in compromise resolution that such finality promotes. These polices accordingly bar Plaintiff's present challenge to his conviction.

> D. *Plaintiff has not properly pled a malicious prosecution claim under either § 1983 or state law because the criminal proceedings never terminated in his favor.*

The instant complaint presents two claims for malicious prosecution, one under § 1983 and one under state law, both of which require a plaintiff to show that the underlying criminal proceedings terminated in his or her favor. Jordan v. Town of Waldoboro, 943 F.3d 532, 545 (1st Cir. 2019) (quoting Hernandez-Cuevas v. Taylor, 723 F.3d 91, 101 (1st Cir. 2013)) (federal constitutional claim for malicious prosecution requires showing that "the defendant (1) caused (2) a seizure of the plaintiff pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in plaintiff's favor"); Horton v. Portsmouth Police Dep't, 22 A.3d 1115, 1124 n.8 (R.I. 2011) (alteration in original) (quoting Hill v. Rhode Island State Emps.' Ret. Bd., 935 A.2d 608, 613 (R.I. 2007)) ("To recover damages for malicious prosecution, a party must 'prove that (1) defendants initiated a prior criminal proceeding against him, (2) they did not have probable cause to initiate such a proceeding, (3) the proceeding was instituted maliciously, and (4) it terminated in [the plaintiff's] favor.'"). Here, Plaintiff can make no such showing. His criminal proceedings produced two favorable outcomes—the vacatur of his original conviction in 2015 and the affirmance of that vacatur a year later. Neither terminated the proceedings; as the complaint details, the case remained alive after the Rhode Island Supreme Court affirmed the vacatur, and a second trial on the 1991 indictment was imminent when Plaintiff entered his Alford plea. See Poventud v. City of New York, 750 F.3d 121, 131 (2d Cir. 2014) (quoting DiBlasio v. City of New York, 102 F.3d 654, 658 (2d Cir. 1996)) (reversal of a conviction and remand for new trial does not constitute favorable termination).

The Alford plea terminated the proceedings. Plaintiff is wrong, however, in his insistence that it did so in his favor. As discussed at length above, courts widely recognize that an Alford plea results in a conviction, a fact that Plaintiff stated he understood at his plea colloquy after full and careful explanation by the hearing justice of the Rhode Island Superior Court. Plaintiff's plea, therefore, foreclosed any possibility of the proceedings terminating in his favor. See Jordan, 943 F.3d at 546 n.5 (quoting Restatement (Second) of Torts § 660 (Am. Law Inst. 1975)) (including, among examples of terminations insufficient to state a malicious prosecution claim, a situation where "the charge is withdrawn or the prosecution abandoned pursuant to an agreement of compromise with the accused"). As such, his plea entirely precludes him from ever bringing a viable malicious prosecution claim based on the events alleged in the instant complaint.

### IV. CONCLUSION

For the reasons set forth herein, Defendants respectfully ask that this Court grant their motion to dismiss.

| | | |
|---|---|---|
| Rodney Remblad,<br>By his attorneys, | Ronald Pennington,<br>By his attorney, | City of Woonsocket,<br>By its attorney, |
| */s/Marc DeSisto*<br>*/s/Patrick K. Burns*<br>Marc DeSisto, Esq. (#2757)<br>Patrick K. Burns, Esq. (#10107)<br>DeSisto Law LLC<br>60 Ship St.<br>Providence, RI 02903<br>(401) 272-4442<br>marc@desistolaw.com<br>pburns@desistolaw.com | */s/Melody A. Alger*<br>Melody A. Alger, Esq. (#4585)<br>Alger Law LLC<br>400 Westminster St., Suite 401<br>Providence, RI 02903<br>(401) 277-1090<br>malger@algerlaw.com | */s/Mark T. Reynolds*<br>Mark T. Reynolds, Esq. (#4764)<br>Reynolds, DeMarco & Boland Ltd.<br>400 Westminster St., Suite 55<br>Providence, RI 02903<br>(401) 861-5522<br>mtreynolds@rdblawfirm.com |

CERTIFICATION OF SERVICE

    I hereby certify that on this 5th day of April 2021, I electronically served this document through the electronic filing system upon the following parties:

| | |
|---|---|
| Thomas G. Briody, Esq. <br> tbriodylaw@aol.com | Ashley Burkett, Esq. (Pro Hac Vice) <br> Ashley.burkett@arnoldporter.com |
| Jeffrey H. Horowitz, Esq. (Pro Hac Vice) <br> Jeffrey.horowitz@arnoldporter.com | Andrew Levchuk, Esq. (Pro Hac Vice) <br> alevchuk@agllegalnet.com |

                                                                                                                        */s/Patrick K. Burns*